J-A02001-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDOLPH LAVELL RODGERS | : | |
| | : | |
| Appellant | : | No. 915 WDA 2016 |

Appeal from the Judgment of Sentence May 23, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014275-2015

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    FILED MAY 21, 2018

Randolph Lavell Rodgers appeals from his judgment of sentence of three to six years imprisonment followed by three years probation after he was convicted of crimes related to his possession of a firearm and a small amount of marijuana. On appeal, Appellant challenges the denial of his pretrial suppression motion. We affirm.

The suppression hearing transcript reveals the following. At approximately 12:45 a.m. on November 1, 2015, Officer Steve Kondrosky of the City of McKeesport police department was dispatched to look for a black male wearing a light-colored sweat suit in the vicinity of a residence that had been the subject of prior burglaries during which firearms had been stolen. Approximately two minutes after the dispatch, Officer Kondrosky spotted Appellant wearing a light-colored sweat suit, and walking in front of a store two blocks from the residence in question. Thirty seconds later, he

encountered Appellant half of a block farther away from the residence, in an unlit alley not commonly used for foot traffic. Officer Kondrosky initially drove past Appellant, and they said hello to each other. Officer Kondrosky then stopped his vehicle and, getting out of it, asked Appellant to stop so he could have a word with him. Appellant then grasped at the waistband of his sweat pants at the right hip, in a manner Officer Kondrosky in his eight years of experience associated with concealment of a firearm, and fled. Officer Kondrosky pursued, and when Appellant eventually was taken into custody, he had a sawed-off rifle in his pants and drugs in his pocket.

As a result, Appellant was charged with numerous crimes. Appellant filed a pre-trial motion to suppress all evidence obtained from his seizure, claiming that Officer Kondrosky lacked reasonable suspicion to stop him. The trial court denied the motion after a hearing. Following a non-jury trial, Appellant was convicted of, inter alia, possession of a firearm prohibited and firearms not to be carried without a license and was immediately sentenced as indicated above. Appellant filed a timely notice of appeal, and both he and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises one question for our consideration:

Whether the trial court erred in denying [Appellant's] motion to suppress when Officer Kondrosky made clear on cross-examination that upon exiting his marked police car, while in full uniform, he immediately ordered [Appellant] to stop but, at the precise moment of seizure, Officer Kondrosky did not have reasonable suspicion, based on specific and articulable facts, to believe that [Appellant] was engaged in criminal activity, in

violation of his federal and state constitutional rights against unreasonable searches and seizures?

Appellant's brief at 5.

We consider Appellant's question mindful of the following standard of review.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.   Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.   Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.   Thus, the conclusions of law of the court[] below are subject to our plenary review.

Commonwealth v. Perel, 107 A.3d 185, 188 (Pa.Super. 2014) (quoting Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010)).

The amount of suspicion necessary to validate an officer's seizure of an individual varies based upon the nature of the interaction.   As we have explained,

> The three levels of interaction are mere encounter, investigative detention, and custodial detention.   A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. A mere encounter does not carry any official compulsion to stop or respond to police, and as a result, does not need to be supported by any level of suspicion.

- 3 -

Commonwealth v. Guzman, 44 A.3d 688, 692-93 (Pa.Super. 2012) (internal citations and quotation marks omitted).

In the instant case, Appellant, the Commonwealth, and trial court all agree that Officer Kondrosky initiated an investigative detention, rather than a mere encounter, when he exited his vehicle and told Appellant to stop. Our review of the record supports that legal determination. Officer Kondrosky initially testified that Appellant fled immediately after the officer merely requested to speak with Appellant. See N.T. Suppression Hearing, 5/17/16, at 12. That would have constituted a mere encounter. See, e.g., Commonwealth v. Young, 162 A.3d 524, 529 (Pa.Super. 2017) (holding three officers' approaching and questioning the defendant on a public street was a mere encounter). However, Officer Kondrosky clarified, after review of his affidavit of probable cause, that he ordered Appellant to stop before requesting to speak with him. See N.T. Suppression Hearing, 5/17/16, at 20-21. Hence, Appellant was subject to an investigative detention from the time Officer Kondrosky ordered him to stop. See, e.g., Commonwealth v. Ranson, 103 A.3d 73, 77 (Pa.Super. 2014) ("Our Supreme Court has held that where a citizen approached by a police officer is ordered to stop . . . obviously a stop occurs." (citation and internal quotation marks omitted)).

Appellant, noting that Officer Kondrosky testified at the suppression hearing that it was only after Appellant was instructed to stop that he reached for his hip and ran, see N.T. Suppression Hearing, 5/17/16, at 20-

21, contends that the officer lacked reasonable suspicion to order him to stop. Appellant's brief at 27.

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

Commonwealth v. Raglin, 178 A.3d 868, 872 (Pa.Super. 2018) (internal citations and quotation marks omitted).

Appellant claims that Officer Kondrosky detained Appellant solely based upon a vague, incomplete description given by the alleged burglary victim through another officer without indication of how fresh the information was. Appellant's brief at 32-33. Appellant argues that such is insufficient to constitute reasonable suspicion. We disagree.

The totality of relevant circumstances are as follows. At approximately 12:45 a.m., Officer Kondrosky was dispatched to a residence with which he was familiar, due to its being the scene of prior burglaries, based upon the report of a new attempted burglary. N.T. Suppression Hearing, 5/17/16, at 6. Another officer had arrived at the scene first, obtained descriptions of the attempted burglars from the victim, and broadcast the descriptions via radio. Id. at 16. Officer Kondrosky drove around the area near the residence looking for a black male in a light-colored sweat suit. Minutes later, he

- 5 -

spotted Appellant, a black male in a light-colored sweat suit, walking in front of an establishment two blocks away from the victim's residence. Id. at 10. He lost sight of Appellant, but found him thirty seconds later, walking in an alley that had no lights and was not commonly travelled because it lead to only one occupied residence. Id. at 11.

We see no error of law of abuse of discretion in the suppression court's finding that the following facts "available to the officer at the moment of the intrusion [would] warrant a man of reasonable caution in the belief" that an investigative detention was appropriate. Commonwealth v. Mackey, 177 A.3d 221, 229 (Pa.Super. 2017) (citation and internal quotation marks omitted). A man fitting the description of a known, identified victim was spotted in the immediate vicinity of the attempted burglary, walking away from the victim's residence, and, after a marked police vehicle passed him, he left the street, in the middle of the night, for an unlit, rarely-used alley. While none of those facts alone is indicative of criminal activity, this "combination of innocent facts, when taken together, . . . warrant[ed] further investigation by the police officer." Raglin, supra at 872. Compare Commonwealth v. Smith, 172 A.3d 26, 34 (Pa.Super. 2017) (concluding officers had reasonable suspicion to stop Smith where he met the description of a suspect obtained from a surveillance video, and was in close proximity to location of drug transaction in an area known for a high volume of drug activity), with Commonwealth v. Morrison, 166 A.3d 357,

- 6 -

366 (Pa.Super. 2017) (holding officers did not have reasonable suspicion to stop Morrison, who was walking down the street at approximately 8:30 p.m., five blocks from the site of a suspected robbery, where the only bases for the stop were a report from unknown source who offered a description of the suspect not wholly consistent with Morrison's appearance, and the fact that Morrison was nervous as the officers approached him).

Thus, Officer Kondrosky had reasonable suspicion to order Appellant to stop for questioning. Further, Appellant acknowledges that Officer Kondrosky had the requisite suspicion to seize him after Appellant grabbed at his waistband in a manner consistent with hiding a firearm and fled. Appellant's brief at 19-20. Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2018